**FILED**



*11:29 am, 6/18/25*

**Margaret Botkins
Clerk of Court**

IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| Stride Learning Center, Inc., | ) | Case No: |
| Plaintiff, | ) | |
| vs. | ) | **COMPLAINT AND JURY DEMAND** |
| Great American Insurance Company | ) | |
| Defendant. | ) | |

**COMES NOW** Plaintiff, Stride Learning Center, Inc., by and through its counsel, Merlin Law Group, PLLC, and hereby submit this Complaint against Defendant, Great American Insurance Company as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff, Stride Learning Center, Inc. (hereinafter "Plaintiff"), is a non-profit organization incorporated in Cheyenne, Wyoming.

2. Defendant, Great American Insurance Company (hereinafter "Defendant" or "Great American"), is a corporation incorporated in the State of Ohio, and authorized to do business in the State of Wyoming.

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), as the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs and is between citizens of different states.

4.      Venue is proper under 28 U.S.C. § 1391 (a)(2) and (c), as a substantial part of the events or omissions giving rise to the claims stated herein occurred in Wyoming and Defendant is subject to jurisdiction in Wyoming.

## FACTUAL ALLEGATIONS

5.      At all times material hereto, Plaintiff was the owner of commercial property located at 326 Parsley Blvd, Cheyenne, Wyoming 82007 (hereinafter the "Property").

6.      The property is a single-story commercial structure composed of three sections built in 1983, 2005, and 2015. The exterior walls of the structure were composed of precast concrete panels. The roofing systems were comprised of ethylene propylene diene monomer (EPDM) roofing membranes installed over polyisocyanurate insulation board.

7.      Plaintiff purchased an all-risk, replacement cost value, policy of insurance from Defendant under Policy Number PAC 437-41-59-01 issued with effective dates May 19, 2023, through May 19, 2024 (the "Policy").

8.      The Policy's insuring agreement provides coverage for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

9.      At all times material hereto, wind was a covered cause of loss under the Policy.

10.     The Policy does not define direct physical loss or direct physical damage.

11.     At all times material hereto, the Property was "Covered Property" for purposes of the Policy's insuring agreement.

12.     Pursuant to its Policy, Defendant agreed to repair, rebuild, and replace damaged Property with materials of like kind and quality.

13. The Policy provides for replacement cost value benefits at the time in which repairs are to be made, not as of the date of loss. This coverage includes and contemplates any increase in cost that may arise based on a change in market conditions such as that experienced around the country as a consequence of market inflation.

14. In August of 2022, Defendant completed an onsite underwriting inspection of the Property and noted that the roofing systems were of good construction quality and in average condition.

15. Defendant, by and through its agents and representatives, had knowledge (or constructive knowledge) of the construction of the insured Property, the age and condition of the insured Property, and the use of such Property, and at all material times hereto Defendant decided to insure and continue to insure the Property. Defendant, having such knowledge, accepted premium payments from Plaintiff in exchange for insuring the Property against loss resulting from hail and other perils.

16. On April 6, 2024, during the Policy period, the Property suffered direct physical loss and/or damage resulting from a severe windstorm (the "Storm").

17. Among other building components, the Storm caused damage to the roof coverings and other building components at the Property (the "Loss").

18. The Storm caused damage to the roof coverings which allowed water to penetrate through the roofing system into the interior of the Property.

19. Plaintiff promptly reported its Loss to Defendant.

20. Defendant assigned Claim Number A00615340 to the Loss (the "Claim").

21. On or about May 1, 2024, Defendant's representative, Thomas Speshock, inspected the Property.

22. During the inspection, Speshock noted that the roofing membrane would "'ripple' in the wind."

23. On May 8, 2024, Defendant notified Plaintiff that it retained an engineer, Rimkus Engineering ("Rimkus") to investigate the cause and origin of damage to the Property.

24. On May 21, 2024, Michael A. Mitchell, of Rimkus inspected the property.

25. Following its inspection, on June 19, 2024, Rimkus drafted a report which acknowledged 78 mph winds at the site on the date of Loss but attributed the entirety of the damages to "extended exposure to the elements, improper installation, and/or deferred maintenance."

26. On July 11, 2024, Great American issued a denial letter stating:

"The expected service life of single-ply EPDM membrane roof coverings are generally considered to be between 15 and 20 years when they are properly installed and maintained, dependent on the thickness and the climate in which it is located. The EDPM roof membrane has reached its life expectancy, the conditions of the failed roof covering were associated to exposure to the elements, improper installation and lack of maintenance."

27. The EPDM Roofing Association states that EPDM roofing systems last up to 40 years or longer.

28. At this juncture, Plaintiff became concerned that if it continued to rely on Great American to investigate the Loss, it would be unable to repair its Property to pre-loss condition from the Storm and retained a public insurance adjuster to assist it with the evaluation of the cost to reconstruct its Property.

29. Plaintiff subsequently retained a professional engineer to perform an assessment of damage to the Property caused by the Storm.

30. On August 9, 2024, Plaintiff requested a copy of the engineering report and adjuster reports from Great American.

31. On August 15, 2024, Great American forwarded a copy of the Rimkus engineering report but refused to provide the adjuster report citing "in-house work product."

32. Plaintiff's engineer performed a comprehensive inspection of the Property.

33. On November 22, 2024, Plaintiff's engineer completed a 21-page report which documented wind-caused damages to the roofing membrane.

34. The report prepared by Plaintiff's engineer further identified a number of issues with the inspection and findings of Defendant's representatives and the insufficiency of Defendant's Claim denial.

35. Plaintiff's engineer made the following conclusions based upon his investigation:

"It is our opinion, within a degree of engineering certainty, that the site experienced damage from wind uplift forces created during the Event - with associated adhesive loss of the membrane to the supporting Polyiso Insulation at the West Building and the roofing board at the East Building, with the following reasons supporting this opinion:
  a. There were several locations, as noted above, on the West and East portions of the structure, where adhesive loss was observed via Roof Cores and from physically walking the roof levels and noting the loose membrane.
  b. The video evidence provided by Mr. Whynott clearly displayed uplifted membrane at the northwest corner on the day of the Event. Subsequently, Mr. Whynott noted water infiltration within the interior of portions in the West Building that included areas near the center of this portion of the structure. Note: By the time of the observation by NRE, these damaged ceiling tiles and other finishes had been removed and repaired.
  c. The locations of the loosened EPDM membrane occurred at locations where higher wind uplift forces would be anticipated, notably at roof edges and ridges. These locations provide the evidence that the observed adhesive loss occurred at these higher uplift forces.

    d. New roof leaks had occurred after this Event took place, with Mr. Whynott noting that the temporary leak repairs occurred only to mitigate these leaks without any permanent repairs taking place prior to the inspections of these membrane roofs."

36. On November 30, 2024, Plaintiff's engineering report was provided to Defendant.

37. Upon its receipt of Plaintiff's engineering report, Defendant knew, or should have known, that additional coverage was owed under the Policy for unpaid Storm-caused wind damage to the Property documented throughout the 21-page report prepared by Plaintiff's engineer.

38. Upon suspicion and belief, Defendant did not provide Plaintiff's engineering report to Rimkus following receipt.

39. On January 15, 2025, Defendant emailed Plaintiff stating:

"I wanted to let you know that we have thoroughly reviewed the report provided by your engineer. Upon examination, we found that the report aligns closely with the observations made by our own engineer during their inspection. Consequently, our overall assessment of the situation remains unchanged. We concluded that the adhesive loss observed on the roof is due to wear and tear and long-term deterioration."

40. On February 19, 2025, Plaintiff's professional engineer completed a 2nd report with reenforcing evidence demonstrating how wind uplift forces during the April 2024 Storm event caused damage to the Property's roofing systems.

41. On February 19, 2025, Plaintiff's public insurance adjuster emailed Great American a copy of Plaintiff's engineer's 2nd engineering report.

42. On February 19, 2025, Plaintiff's public insurance adjuster emailed Great American a comprehensive estimate of Storm-caused damages totaling $733,740.48 Replacement Cost Value (RCV) and $652,101.31 Actual Cash Value (ACV).

43. On March 4, 2025, the Plaintiff, through counsel, sent a letter to the Defendant requesting reconsideration of Great American's denial of the Claim. The letter identified

discrepancies between the Rimkus engineering report and supplemental findings by the Plaintiff's engineer, which supported wind-related damage. It also noted that EPDM roofing systems typically have service lives exceeding Rimkus's claimed 20 years and emphasized that Great American accepted premiums without excluding the roof due to its age.

44. On March 4, 2025, Plaintiff presented Defendant with a sworn proof of loss for Storm-caused damages totaling $733,740.48 RCV.

45. On March 26, 2025, Rimkus completed a 2nd report standing by its opinion that the 18-year-old roof exceeded its service life. The Rimkus report asserted that the 78 mph Storm event did not contribute to the Loss. Instead Rimkus opined that the EPDM roofing system exceeded its expected service life due to long-term weathering, improper installation, and maintenance. The Rimkus report further asserted that the 18-year-old roof should meet wind speed ratings from when it was new.

46. On May 15, 2025, Defendant notified Plaintiff that it was standing by its previous claim denial.

47. To date, Defendant has refused to release additional coverage for any of the unpaid Storm caused damage identified by Plaintiff's engineer and public insurance adjuster.

48. As outlined throughout the preceding Paragraphs of this Complaint, Defendant failed to conduct an investigation that was adequate or fair. Defendant conducted an outcome-oriented investigation which required Plaintiff to continually fight for coverage benefits which should have been assessed from the beginning of the Claim.

49. Plaintiff has fulfilled all duties required of it under the Policy after discovery of the Loss.

50. Plaintiff has performed all conditions precedent and subsequent required under the Policy, or alternatively, have been excused from performance by the acts, representations, and conduct of Defendant.

51. The actions of Defendant have caused, and continue to cause, Plaintiff great financial harm.

52. The cost of repairs to the Property in dispute have increased due to the unreasonable delay caused by Defendant's untenable position and its failure to consider the information provided by Plaintiff.

53. As a result of the wrongful acts and omissions of Defendant, Plaintiff were forced to retain the professional services of public adjuster, engineer, and Merlin Law Group, PA, who is representing Plaintiff with respect to these causes of action.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract)**

54. Plaintiff realleges and reaffirms the preceding paragraphs as if fully set forth herein.

55. Plaintiff purchased an all-risk Policy requiring Defendant to pay for any and all fortuitous damages resulting from a loss not expressly excluded or otherwise limited by the Policy.

56. The Policy is an enforceable contract between Plaintiff and Defendant.

57. Plaintiff paid premiums and otherwise performed all conditions precedent to recovery of benefits under its Policy with Defendant.

58. The Policy contained a provision mandating that Defendant pay for accidental direct physical loss to the Property caused by wind.

59. Defendant refuses to provide the contractually required and covered benefits to Plaintiff, including coverage for repair of wind damage to the Property caused by the Storm.

60. Plaintiff has provided Defendant with a comprehensive engineering report showing Storm-caused damages that have been denied by Defendant.

61. The facts do not support Defendant's denial of Plaintiffs Claim.

62. These Storm-caused damages are covered under the terms of the Policy.

63. The failure of Defendant to honor its obligations under the Policy is a breach of contract.

64. As a direct and proximate result of Defendant's breach of its obligations under the Policy, Plaintiff have suffered damage in excess of $75,000.

65. Plaintiff is entitled to all benefits due and owing under the Policy.

66. Defendant's failure to cover Plaintiff's losses constitutes a breach of the Policy contract.

67. Defendant's failure to pay the Plaintiffs' losses has damaged the Plaintiffs in an amount to be proven at trial.

68. Plaintiff is entitled to judgment against Defendant in the full amount of its covered losses for its claim, plus interest.

**SECOND CLAIM FOR RELIEF**
**(Unfair Claims Settlement Practices and Attorney Fees)**

69. Plaintiff realleges and reaffirms the preceding paragraphs as if fully set forth herein.

70. Plaintiff has presented evidence establishing a covered Loss under the Policy, including comprehensive engineering reports and estimates that detail the Storm-caused damages to the Property.

71. Defendant's actions include failing to conduct a fair and adequate investigation and relying on unsubstantiated conclusions to deny coverage.

72. Plaintiff has presented evidence including comprehensive engineering reports and estimates that detail the Storm-caused damages to the Property.

73. Defendant's actions include failing to conduct a fair and adequate investigation and relying on outcome-oriented consultants to deny coverage.

74. Defendant's unjustified refusal to provide coverage for Plaintiff's losses is an unfair claims settlement practice in violation of Wyo. Stat. § 26-13-124(a)(iv), (vi), and (xiv) among others.

75. Defendant's refusal to pay the Plaintiffs' claim is unreasonable and without cause.

76. Plaintiff is entitled to recover its attorney's fees and costs in pursuing this matter, plus interest at ten percent (10%) per year under Wyo. Stat. § 26-15-124(c).

77. The Court should enter judgment in favor of the Plaintiffs and against the Defendant in the amount of the covered losses, plus attorney's fees and costs, and interest at ten percent (10%) per year.

**THIRD CLAIM FOR RELIEF**
**(Breach of Duty of Good Faith and Fair Dealing)**

78. Plaintiff realleges and reaffirms the preceding paragraphs as if fully set forth herein.

79. Plaintiff and Defendant have a special relationship under the Policy contract because Defendant has superior bargaining power with regard to the Policy contract.

80. Defendant has failed to deal with Plaintiffs fairly and in good faith on the resolution of the Plaintiff's claim under the Policy.

81. Defendant breached its obligation not to commit an act that would injure the rights of Plaintiff to receive the full benefit of the contract between the parties.

82. Defendant's actions were not consistent with the agreed common purpose and justified expectations of Plaintiff that Plaintiff would receive the full benefit of the insurance Policy issued by Defendant.

83. Defendant has denied Plaintiff's claim on an unsubstantiated conclusion that the Loss is not a covered loss.

84. Defendant's actions have defeated the purpose and intentions of the Policy language and denied the Plaintiff of its reasonable expectations under the Policy contract.

85. Defendant's actions have prevented the Plaintiff from receiving the benefit to which it is entitled to under the Policy contract. Defendant's actions have damaged Plaintiff and Plaintiff is entitled to judgment against Defendant for all of its damages for its loss as proven at trial.

86. Plaintiff is further entitled to judgment for punitive damages against Defendant because of Defendant's improper actions in handling Plaintiff's claim under the Policy.

## FOURTH CLAIM FOR RELIEF
### (Insurance Bad Faith)

87. Plaintiff realleges and reaffirms the preceding paragraphs as if fully set forth herein.

88. Defendant owed duties arising from the Policy's implied covenants of good faith and fair dealing, under which Defendant covenanted that it would, in good faith and in the exercise of fair dealing, deal with Plaintiff fairly and honestly, faithfully perform its duty of representation, and do nothing to impair, interfere with, hinder, or potentially injure Plaintiff's rights to receive the benefits provided by the Policy.

89. An insurer breaches its duty of good faith and fair dealing when it engages in unfair claim settlement practices, denying and delaying due payment of available benefits under the Policy.

90. At all times, Plaintiff fulfilled its obligations under the Policy and acted in accordance with the of good faith and fair dealing.

91. Defendant breached its covenant of good faith and fair dealing that it owes to Plaintiff by engaging in a pattern of conduct designed to deprive Plaintiff of its rights and benefits under the Policy.

92. As described in more detail above, Defendant failed to conduct a timely or objectively reasonable investigation. Consequently, Plaintiff has been delayed in its ability to timely repair its Property, resulting in an increase in the cost of construction.

93. As described in more detail above, Defendant has refused to consider the conflicting opinions of Plaintiff's engineer. Instead, Defendant has unreasonably preferred the flawed opinions of its own engineer over the countering opinions of Plaintiff's engineer.

94. As described in more detail above, Defendant has unnecessarily compelled Plaintiff to file this lawsuit to recover benefits owed under the Policy.

95. The conduct of Defendant has resulted in an avoidable harm to Plaintiff.

96. It is apparent from the conduct of Defendant in its handling of Plaintiff's Claim that Defendant has adopted a plan or approach to delay, as much as possible, its handling and payment of the Claim.

97. Defendant has committed such actions deliberately and with such frequency in this Claim as to indicate a general business practice.

98. Plaintiff has suffered, and continues to suffer actual damages, due to Defendant's breach of its covenant of good faith and fair dealing.

99. As a direct and proximate result of Defendant's actions, Plaintiff have:

  (a) Incurred and will incur in the future increased costs to repair, restore and/or replace the significant property damage;
  (b) Suffered and will continue to suffer damages as a foreseeable and proximate result of the misconduct alleged; and
  (c) Suffered and will continue to suffer other expenses, including attorneys' fees, public insurance adjuster fees, engineering fees, investigatory fees, and other losses.

100. As detailed in the preceding allegations, Defendant and its agents knowingly or with reckless disregard underestimated the Claim by relying on an outcome-oriented consultant despite evidence provided by Plaintiff's engineer demonstrating wind-caused damages.

101. As described in more detail above, Defendant recklessly disregarded the factual information submitted by Plaintiff and Plaintiff's representatives demonstrating additional insurance coverage was due and owing under the Policy.

102. Under an objective standard, Defendant had no reasonable basis to deny Plaintiff's Claim under the Policy

103. Defendant had knowledge or recklessly disregarded the fact that it had no reasonable basis for denying Plaintiff's Claim.

104. The denial of Plaintiff's claim under the Policy was not fairly debatable.

105. Defendant's actions were unreasonable, oppressive and intimidating and directed against Plaintiffs to try to get Plaintiffs to abandon pursuing Claim under the Policy.

106. Defendant's actions in denying Plaintiff's Claim damaged Plaintiff.

107. Plaintiff is entitled to an award of compensatory damages as a result of Defendant's actions.

108.   Defendant's actions rise to the level such that Plaintiff is entitled to an award of punitive damages against Defendant for Defendant's actions. Plaintiff should further be awarded its reasonable attorney's fees and costs incurred in pursuing this matter.

109.   Plaintiff is entitled to judgment against the Defendant for the damages claimed herein.

## DEMAND FOR JURY TRIAL

110.   Plaintiff demands trial by jury with respect to all claims and issues triable to a jury.

## REQUEST FOR RELIEF

111.   Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendant for breach of contract; for all costs, expenses, and reasonable attorney fees incurred by Plaintiff as allowed by any statute, court rule, or contract, including Wyo. Stat. § 26-13-124; for pre-judgment and post-judgment interest as permitted by statute or court rule; and for such other relief as the Court may deem just and proper.

Dated: June 16, 2025               Respectfully submitted,

                                   s/Jonathan E. Bukowski
                                   Jonathan E. Bukowski
                                   Merlin Law Group, PLlc
                                   1001 17th Street, Suite 1150
                                   Denver, CO 80202
                                   Telephone: (720) 665-9680
                                   E-Mail: jbukowski@merlinlawgroup.com
                                   *Attorney for Plaintiff*